IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

UNITED STATES OF AMERICA and
STATE OF NEBRASKA,

      Plaintiffs,

          v.

CLEAN HARBORS ENVIRONMENTAL
SERVICES, INC.,

      Defendant.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

Civil Action No. 8:20-CV-351

**CONSENT DECREE**

i

TABLE OF CONTENTS

I.       JURISDICTION AND VENUE ............................................................................. 4
II.      APPLICABILITY ................................................................................................... 4
III.     DEFINITIONS ........................................................................................................ 6
IV.      CIVIL PENALTY ................................................................................................... 7
V.       COMPLIANCE REQUIREMENTS ...................................................................... 9
VI.      REPORTING REQUIREMENTS ....................................................................... 14
VII.     STIPULATED PENALTIES ................................................................................ 16
VIII.    FORCE MAJEURE .............................................................................................. 20
IX.      DISPUTE RESOLUTION .................................................................................... 22
X.       INFORMATION COLLECTION AND RETENTION ...................................... 24
XI.      EFFECT OF SETTLEMENT/RESERVATION OF RIGHTS .......................... 26
XII.     COSTS ................................................................................................................... 27
XIII.    NOTICES .............................................................................................................. 28
XIV.     EFFECTIVE DATE .............................................................................................. 30
XV.      RETENTION OF JURISDICTION ..................................................................... 30
XVI.     MODIFICATION ................................................................................................. 30
XVII.    TERMINATION ................................................................................................... 30
XVIII.   PUBLIC PARTICIPATION ................................................................................ 31
XIX.     SIGNATORIES/SERVICE .................................................................................. 31
XX.      INTEGRATION ................................................................................................... 32
XXI.     FINAL JUDGMENT ............................................................................................ 32
XXII.    APPENDICES ....................................................................................................... 32

Plaintiffs United States of America, on behalf of the United States Environmental Protection Agency ("EPA"), and the State of Nebraska ("State"), acting through the Nebraska Attorney General, on behalf of the Nebraska Department of Environment and Energy ("NDEE"), have filed a complaint in this action concurrently with this Consent Decree, alleging that Defendant, Clean Harbors Environmental Services, Inc., violated Sections 3004 and 3005 of the Resource Conservation and Recovery Act ("RCRA"), 42 U.S.C. §§ 6924, 6925; Sections 112(r) and 113 of the Clean Air Act ("CAA"), 42 U.S.C. §§ 7412(r) and 7413; Section 313(a) of the Emergency Planning and Community Right to Know Act ("EPCRA"), 42 U.S.C. § 11023(a); and the Nebraska Environmental Protection Act, Neb. Rev. Stat. § 81-1501 *et seq*.

The Complaint against Defendant alleges that violations of these statutes and the regulations promulgated thereunder have occurred at Defendant's hazardous waste treatment, storage and disposal facility located at 2247 South Highway 71 in Kimball, Nebraska. The facility performs hazardous materials management and disposal services. As part of its operations, the facility receives bulk solid and hazardous wastes in drums and containers, and liquid, solid, and hazardous wastes by tanker truck and drums. These wastes are either incinerated on-site or shipped off-site to another designated facility. Over a series of inspections conducted by EPA and NDEE between 2011 and 2019, EPA and NDEE contend that Defendant has committed hazardous waste management, risk management, air emissions, and toxic release inventory reporting violations at its facility.

Defendant does not admit any liability to the United States or the State arising out of the transactions or occurrences alleged in the Complaint.

The Parties recognize, and the Court by entering this Consent Decree finds, that this Consent Decree has been negotiated by the Parties in good faith and will avoid litigation among the Parties and that this Consent Decree is fair, reasonable, and in the public interest.

NOW, THEREFORE, before the taking of any testimony, without the adjudication or admission

3

of any issue of fact or law except as provided in Section I and with the consent of the Parties, IT IS

HEREBY ADJUDGED, ORDERED, AND DECREED as follows:

## I.      JURISDICTION AND VENUE

1.      This Court has jurisdiction over the subject matter of this action, pursuant to 28 U.S.C.

§§ 1331, 1345, and 1355, and Sections 113(b) and 167 of the CAA, 42 U.S.C. §§ 7413(b) and 7477;

Section 325(c)(4) of EPCRA, 42 U.S.C. § 11045(c)(4); and Sections 3008(a)(1) and (g) of RCRA, 42

U.S.C. §§ 6928(a)(1) and (g), and over the Parties.  Venue lies in this District pursuant to CAA Section

113(b), 42 U.S.C. § 7413(b); EPCRA Section 325(b)(3), 42 U.S.C. § 11045(b)(3); RCRA Section

3008(a), 42 U.S.C. § 6928(a); and 28 U.S.C. §§ 1391(b), (c), and 1395(a), because it is the judicial

district where the Defendant is located, where a substantial part of the events or omissions giving rise to

the claim occurred, and where the alleged violations occurred.  For purposes of this Decree, or any

action to enforce this Decree, Defendant consents to the Court's jurisdiction over this Decree and any

such action and over Defendant and consents to venue in this judicial district.

2.      For purposes of this Consent Decree, Defendant agrees that the Complaint states claims

upon which relief may be granted pursuant to Sections 3004 and 3005 of RCRA, 42 U.S.C. §§ 6924,

6925; Sections 112(r) and 113 of the CAA, 42 U.S.C. §§ 7412(r) and 7413; Section 313(a) of EPCRA,

42 U.S.C. § 11023(a); and the Nebraska Environmental Protection Act, Neb. Rev. Stat. § 81-1501 *et seq*.

## II.      APPLICABILITY

3.      The obligations of this Consent Decree apply to and are binding upon the United States

and the State, and upon Defendant and any successors, assigns, or other entities or persons otherwise

bound by law.

4.      No transfer of ownership or operation of the Facility, whether in compliance with the

procedures of Paragraphs 4 or 5 or otherwise, shall relieve the Defendant of its obligations to ensure that

the terms of this Consent Decree are implemented unless:

4

a.      The transferee agrees in writing to: (i) undertake the obligations required by this Consent Decree with respect to the Facility that is the subject of the transfer; and (ii) be substituted for the Defendant as a party under this Decree and thus be bound by the terms thereof; and

b.      The United States and the State consent to relieve the Defendant of its obligations. The United States and the State may refuse to approve the substitution of the transferee for the Defendant if the United States determines that the proposed transferee does not have the technical ability and/or the financial means to comply with the applicable obligations of this Consent Decree. Disputes between the Defendant and the United States and the State under this Subparagraph shall be resolved pursuant to Section IX (Dispute Resolution) of this Decree.

5.      At least 30 Days prior to such transfer, Defendant shall provide a copy of this Consent Decree to the proposed transferee and shall simultaneously provide written notice of the prospective transfer, together with a copy of the proposed written agreement, to EPA Region 7, the United States Attorney for the District of Nebraska, the United States Department of Justice, the State, and NDEE in accordance with Section XIII (Notices).  Any attempt to transfer ownership or operation of the Facility without complying with Paragraphs 4 and 5 constitutes a violation of this Decree.

6.      Defendant shall provide a copy of this Consent Decree to all officers, employees, and agents whose duties might reasonably include compliance with any provision of this Decree, as well as to any contractor retained to perform work required under this Consent Decree.  Defendant shall condition any such contract upon performance of the work in conformity with the terms of this Consent Decree.

7.      In any action to enforce this Consent Decree, Defendant shall not raise as a defense the failure by any of its officers, directors, employees, agents, or contractors to take any actions necessary to comply with the provisions of this Consent Decree.

### III.   DEFINITIONS

8.      Terms used in this Consent Decree that are defined in the CAA, RCRA, EPCRA, or the Nebraska Environmental Protection Act, or in regulations promulgated pursuant to those statutes (including 40 C.F.R. Parts 61, 63, 68, 260-270, and 372, and Nebraska Administrative Code Titles 128 and 129), shall have the meanings assigned to them in those statutes or such regulations, unless otherwise provided in this Consent Decree.  Whenever the terms set forth below are used in this Consent Decree, the following definitions shall apply:

"Complaint" shall mean the complaint filed by the United States and the State in this action;

"Consent Decree" or "Decree" shall mean this Decree and all appendices attached hereto (listed in Section XXII);

"Day" shall mean a calendar day unless expressly stated to be a business day.  In computing any period of time under this Consent Decree, where the last day would fall on a Saturday, Sunday, or federal holiday, the period shall run until the close of business of the next business day;

"Defendant" shall mean the Clean Harbors Environmental Services, Inc.;

"EPA" shall mean the United States Environmental Protection Agency and any of its successor departments or agencies;

"Effective Date" shall have the definition provided in Section XIV;

"Facility" shall mean Defendant's hazardous waste treatment, storage and disposal facility located in Kimball, Nebraska;

"Incompatible Chemical Reaction" shall mean any reaction that (1) Results in combustion of any material; (2) Generates extreme heat or pressure, fire or explosion, or violent reaction; (3) Produces

6

uncontrolled toxic mists, fumes, dusts, or gases in sufficient quantities to threaten human health; (4) Produces uncontrolled flammable fumes or gases in sufficient quantities to pose a risk of fire or explosions; (5) Damages the structural integrity of the device or facility containing the waste; or (6) Through other like means threatens human health or the environment;

"NDEE" shall mean the Nebraska Department of Environment and Energy and any of its successor departments;

"Paragraph" shall mean a portion of this Decree identified by an Arabic numeral;

"Parties" shall mean the United States, the State, and Defendant;

"Permit" shall mean the RCRA Part I and Part II permit issued to Defendant, effective December 1, 2005; May 29, 2009; and December 31, 2015; respectively; the Construction Permit #CP13-008 issued May 20, 2013; and Title V Operating Permit number 11M1-009, dated August 11, 2011, including the current permits or such permits that succeed the current permit issued and in effect at the relevant times under this Consent Decree;

"Section" shall mean a portion of this Decree identified by a Roman numeral;

"State" shall mean the State of Nebraska, acting on behalf of NDEE;

"United States" shall mean the United States of America, acting on behalf of EPA.

## IV.   CIVIL PENALTY

9.      Within 30 Days after the Effective Date, Defendant shall pay the sum of $790,000 as a civil penalty, together with interest accruing from the date on which the Consent Decree is lodged with the Court, at the rate specified in 28 U.S.C. § 1961 as of the date of lodging, as follows: $498,820 to the United States and $291,180 to the State.

10.     Defendant shall pay the civil penalty due to the United States by FedWire Electronic Funds Transfer ("EFT") to the U.S. Department of Justice account, in accordance with instructions provided to Defendant by the Financial Litigation Unit ("FLU") of the United States Attorney's Office

for the District of Nebraska after the Effective Date.  The payment instructions provided by the FLU will

include a Consolidated Debt Collection System ("CDCS") number, which Defendant shall use to

identify all payments required to be made in accordance with this Consent Decree.  The FLU will

provide the payment instructions to:

> Timmery Fitzpatrick
> Assistant General Counsel
> Clean Harbors
> P.O. Box 9149
> 42 Longwater Drive
> Norwell, MA 02061-9149
> fitzpatrick.timmery@cleanharbors.com

on behalf of Defendant.  Defendant may change the individual to receive payment instructions on its

behalf by providing written notice of such change to the United States and EPA in accordance with

Section XIII (Notices).

At the time of payment, Defendant shall send notice that payment has been made: (i) to EPA via

email at cinwd_acctsreceivable@epa.gov or via regular mail at EPA Cincinnati Finance Office, 26 W.

Martin Luther King Drive, Cincinnati, Ohio 45268; (ii) to the United States via email or regular mail in

accordance with Section XIII; and (iii) to EPA in accordance with Section XIII.  Such notice shall state

that the payment is for the civil penalty owed pursuant to the Consent Decree in *U.S. and State of

Nebraska v. Clean Harbors Environmental Services, Inc.* and shall reference the civil action number,

CDCS Number and DOJ case number 90-7-1-11505.

11.    Defendant shall pay the civil penalty due to the State by Electronic Funds Transfer to the

Nebraska State Treasurer's Office account, in accordance with instructions provided to Defendant by the

Nebraska Attorney General's Office after the Effective Date.  The Nebraska Attorney General's Office

will provide the payment instructions to:

Timmery Fitzpatrick
Assistant General Counsel
Clean Harbors
P.O. Box 9149
42 Longwater Drive
Norwell, MA 02061-9149
fitzpatrick.timmery@cleanharbors.com

Defendant may change the individual to receive payment instructions on its behalf by providing written notice of such change to the State in accordance with Section XIII (Notices).

At the time of payment, Defendant shall send notice that payment has been made to the State via email or regular mail in accordance with Section XIII (Notices).  Such notice shall state that the payment is for the civil penalty owed pursuant to the Consent Decree in *U.S. and State of Nebraska v. Clean Harbors Environmental Services, Inc.*, and shall reference the civil action number.

12.    Defendant shall not deduct any penalties paid under this Decree pursuant to this Section or Section VII (Stipulated Penalties) in calculating its federal, State or local income tax.

## V.    COMPLIANCE REQUIREMENTS

13.    Defendant shall comply with the applicable requirements of RCRA, CAA, EPCRA, the Nebraska Environmental Protection Act, Neb. Rev. Stat. § 81-1501 *et seq*., and all federal and state regulations and permits implementing these statutes, with respect to the Facility.  In addition, Defendant shall perform the actions in paragraphs 14 through 22 below.

14.    **Waste Acceptance.**  Within 90 Days of the Effective Date, Defendant shall submit to EPA and the State for review and approval a Waste Acceptance Plan that describes specific actions that Defendant will take to ensure that all waste that is scheduled to be received on-site contains an accurate waste code, and that the waste code may be accepted for treatment at the facility per the terms of the Permit.  Upon approval by EPA and the State, the Waste Acceptance Plan shall be incorporated into the Facility's Hazardous Waste and Storage Facility Permit.

9

15. **Secondary Containment.**  Within 60 Days of the Effective Date, Defendant shall submit to EPA and the State for review and approval a Secondary Containment Plan which outlines specific measures for addressing cracks and gaps in secondary containment, including a schedule for inspections and corrective action during all weather conditions.  Upon approval by EPA and the State, the Secondary Containment Plan shall be incorporated into the Facility's Hazardous Waste and Storage Facility Permit.

16. **Inspection Protocol.**  Within 90 Days of the Effective Date, Defendant shall submit to EPA and the State for review and approval an Inspection Protocol Plan for containers, tanks, equipment subject to 40 CFR § 264.1050(c), hazardous waste management buildings and the thermal oxidation unit at the Facility, including procedures for detection of potential releases or conditions that could cause a release, documentation of findings, and procedures for addressing findings in a timely manner.  Upon approval pursuant to the Consent Decree, the Inspection Protocol Plan shall be incorporated into the Facility's Hazardous Waste and Storage Facility permit.

17. **Risk Management Program Management System.**  Within 30 Days of the Effective Date, Defendant shall submit to EPA and the State a revised organization chart or similar document, consistent with 40 C.F.R. § 68.15, that identifies the qualified person or position with overall responsibility for the development, implementation, and integration of the risk management program elements at the Facility; additional persons or positions assigned to implement individual requirements of the risk management program; persons or positions with backup responsibility for the implementation of individual requirements if the primary person is unavailable; and the lines of authority between all persons or positions with responsibility for risk management program requirements.  Defendant shall continue to update the written management system to reflect any changes in lines of authority.

18. **Standard Operating Procedures**.  Defendant has developed, and submitted to EPA and the State, certain Standard Operating Procedures and Safety Standards (hereinafter collectively "SOPs")

10

applicable to operations at the Facility for ensuring that incompatible wastes,  including household

wastes as that term is defined in 40 C.F.R. § 261.4(b), are not combined during processing, to minimize

the hazards associated with mixing incompatible wastes, and in order to minimize the possibility of fire,

explosion, or any unplanned sudden or non-sudden release of hazardous waste constituents to any media

in accordance with 40 C.F.R. § 264.31, 40 C.F.R. § 68.69 and the Facility's RCRA Permit:

a. SOP # 3.5 Drum Receiving

b. SOP # 4.1 Facility Plant Van Review

c. SOP # 4.2 Sampling Bulk Liquids and Wet Solids

d. SOP # 4.5.2 Blending Procedures

e. SOP # 4.5.3 Wet Solids Offloading

f. SOP # 4.6.1.1 Area 55 Paint Shredding System

g. SOP # 4.6.2 Area 55 Process Mixing

h. SOP # 4.6.3 Bridgecrane/Clamshell – Area 55

i. SOP # 4.6.5 Container Movement – Area 55 Bulks

j. SOP # 4.6.6 Fire Alarms Area 55

k. SOP # 4.6.7 Non-Bulk Container Sampling

l. SOP # 4.6.8 Area 55 Dual Stack Shredder

m. SOP # 4.6.9 Drum Liquid Decant

n. SS # 55-508 Kimball Facility Drum Compatibility Waste Review Procedure

Defendant will continue to ensure compliance with these SOPs, and in response to any event, such as an

Incompatible Chemical Reaction, evaluate whether changes to the SOPs should be made to prevent such

future events.

19. **Compile Process Safety Information**.  In accordance with 40 C.F.R. § 68.65, prior to

conducting a Process Hazard Analysis ("PHA"), Defendant shall compile written process safety

information including documentation that the equipment in the process complies with recognized and generally accepted good engineering practices ("RAGAGEP").  Each PHA shall include a list of all RAGAGEP and document that equipment in the process complies with RAGEGAP.

20.     **Process Hazard Analysis.**  Defendant shall conduct and submit to EPA and the State a PHA for Building 55 by December 31, 2021 in accordance with the Risk Management Program provisions at 40 C.F.R. § 68.67 and applicable RAGAGEP.  The PHA shall address potential incompatibility scenarios from mixing process chemicals that may result in an Incompatible Chemical Reaction, including use of a chemical interaction matrix to examine possible interaction of process chemicals which may contact each other in the process.  Defendant shall establish and submit to EPA and the State a program to identify and track recommendations from PHA reports as required by 40 C.F.R. § 68.67 to ensure that deficiencies are corrected on a schedule appropriate to the relative risk of each deficiency.

21.     **Fire Hazard Prevention and Response Program.**  Defendant shall, as promptly as possible but no later than 48 hours after any Incompatible Chemical Reaction in Building 55, conduct an incident investigation for each Incompatible Chemical Reaction in accordance with 40 C.F.R. § 68.81, regardless of whether each incident resulted in, or could have reasonably resulted in a catastrophic release of a regulated substance.  The investigation shall identify the source and category of any wastes involved, what characterizations of such waste was done to determine compatibility, and what measures shall be taken to prevent mixing of incompatible wastes in the future.  Notice shall be provided to EPA and to the State within 24 hours of any Incompatible Chemical Reaction, and a report of the incident investigations shall be provided to EPA and the State within 15 Days of completion.

22.     **Audits**.  In accordance with the provisions and schedule in Appendix A, Defendant shall hire an Auditor(s) to conduct third party audits at the Facility. Defendant shall comply with and implement all the provisions of Appendix A, including any corrective actions required thereunder.

23.     <u>Approval of Deliverables</u>.  After review of any plan, report, or other item that is required to be submitted pursuant to this Consent Decree, EPA, after consultation with the State, shall in writing: (a) approve the submission; (b) approve the submission upon specified conditions; (c) approve part of the submission and disapprove the remainder; or (d) disapprove the submission.

24.     If the submission is approved pursuant to Paragraph 23, the approved plan shall be incorporated into this Consent Decree, and Defendant shall take all actions required by the plan, report, or other document, in accordance with the schedules and requirements of the plan, report, or other document, as approved.  If the submission is conditionally approved or approved only in part pursuant to Paragraph 23(b) or (c), Defendant shall, upon written direction from EPA, after consultation with the State, take all actions required by the approved plan, report, or other item that EPA, after consultation with the State, determines are technically severable from any disapproved portions, subject to Defendant's right to dispute only the specified conditions or the disapproved portions, under Section IX (Dispute Resolution).

25.     If the submission is disapproved in whole or in part pursuant to Paragraph 23(c) or (d), Defendant shall, within 45 Days or such other time as the Parties agree to in writing, correct all deficiencies and resubmit the plan, report, or other item, or disapproved portion thereof, for approval, in accordance with the preceding Paragraphs.  If the resubmission is approved in whole or in part, Defendant shall proceed in accordance with the preceding Paragraph.

26.     If a resubmitted plan, report, or other item, or portion thereof, is disapproved in whole or in part, EPA, after consultation with the State, may again require Defendant to correct any deficiencies, in accordance with the preceding Paragraphs, or may themselves correct any deficiencies subject to Defendant's right to invoke Dispute Resolution and the right of EPA and the State to seek stipulated penalties as provided in Section VII.

27.     Any stipulated penalties applicable to the original submission, as provided in Section VII, shall accrue during the 45 Day period or other specified period, but shall not be payable unless the resubmission is untimely or if the original submission or the resubmission was so deficient as to constitute a material breach of Defendant's obligations under this Decree, the stipulated penalties applicable to the original submission shall be due and payable notwithstanding any subsequent resubmission.

28.     <u>Permits</u>.  Where any compliance obligation under this Section requires Defendant to obtain a federal, state, or local permit or approval, Defendant shall submit timely and complete applications and take all other actions necessary to obtain all such permits or approvals.  Defendant may seek relief under the provisions of Section VIII (Force Majeure) for any delay in the performance of any such obligation resulting from a failure to obtain, or a delay in obtaining, any permit or approval required to fulfill such obligation, if Defendant has submitted timely and complete applications and has taken all other actions necessary to obtain all such permits or approvals.

## VI.     REPORTING REQUIREMENTS

29.     Defendant shall submit the following reports:

a.      By July 31st and January 31st of each year after the lodging of this Consent Decree, until termination of this Decree pursuant to Section XVII (Termination), Defendant shall submit in writing a semi-annual report for the preceding six months that shall include the status of any compliance audits and other compliance measures; completion of milestones; problems encountered or anticipated, together with implemented or proposed solutions; summarize all Incompatible Chemical Reactions that occurred in Building 55 during the report period and document all corrective actions implemented to prevent recurrence; and reports to state agencies.  The first report after the Effective Date shall cover

14

the entire period since signature by Defendant, even if it encompasses more than six months.

b.    The report shall also include a description of any non-compliance with the requirements of this Consent Decree and an explanation of the violation's likely cause and of the remedial steps taken, or to be taken, to prevent or minimize such violation.  If Defendant violates, or has reason to believe that it may violate, any requirement of this Consent Decree, Defendant shall notify the United States and the State of such violation and its likely duration, in writing, within 15 Days of the Day Defendant first becomes aware of the violation, with an explanation of the violation's likely cause and of the remedial steps taken, or to be taken, to prevent or minimize such violation.  If the cause of a violation cannot be fully explained at the time the report is due, Defendant shall so state in the report. Defendant shall investigate the cause of the violation and shall then submit an amendment to the report, including a full explanation of the cause of the violation, within 30 Days of the Day Defendant becomes aware of the cause of the violation.  Nothing in this Paragraph or the following Paragraph relieves Defendant of its obligation to provide the notice required by Section VIII (Force Majeure).

30.    Whenever any violation of this Consent Decree or of any applicable permits or any other event affecting Defendant's performance under this Decree, or the performance of its Facility, may pose an immediate threat to the public health or welfare or the environment, Defendant shall notify EPA and the State orally or by electronic transmission as soon as possible, but no later than 24 hours after Defendant first knew of the violation or event.  This procedure is in addition to the requirements set forth in the preceding Paragraph.

15

31.     All reports shall be submitted to the persons designated in Section XIII (Notices).

32.     Each report submitted by Defendant under this Section shall be signed by an official of the submitting party and include the following certification:

> I certify under penalty of law that this document and all attachments were prepared under my direction or supervision in accordance with a system designed to assure that qualified personnel properly gather and evaluate the information submitted.  Based on my inquiry of the person or persons who manage the system, or those persons directly responsible for gathering the information, the information submitted is, to the best of my knowledge and belief, true, accurate, and complete.  I have no personal knowledge that the information submitted is other than true, accurate, and complete.  I am aware that there are significant penalties for submitting false information, including the possibility of fine and imprisonment for knowing violations.

33.     This certification requirement does not apply to emergency or similar notifications where compliance would be impractical.

34.     The reporting requirements of this Consent Decree do not relieve Defendant of any reporting obligations required by the Acts or implementing regulations, or by any other federal, state, or local law, regulation, permit, or other requirement.

35.     Any information provided pursuant to this Consent Decree may be used by the United States and the State in any proceeding to enforce the provisions of this Consent Decree and as otherwise permitted by law.

## VII.    STIPULATED PENALTIES

36.     Defendant shall be liable for stipulated penalties to the United States and the State for violations of this Consent Decree as specified below, unless excused under Section VIII (Force Majeure).  A violation includes failing to perform any obligation required by the terms of this Decree, including any work plan or schedule approved under this Decree, according to all applicable requirements of this Decree and within the specified time schedules established by or approved under this Decree.

37.   <u>Late Payment of Civil Penalty</u>.  If Defendant fails to pay the civil penalty required to be paid under Section IV (Civil Penalty) when due, Defendant shall pay a stipulated penalty of $10,000 per Day for each Day that the payment is late.

38.   Stipulated Penalties for Paragraphs 13-22:

a.   <u>Audit Findings</u>. For any violations listed in an Auditor's Report submitted to EPA and the State pursuant to Appendix A, provided that such Audit Finding is corrected in accordance with Paragraphs 20 - 24 of Appendix A, no stipulated penalties shall apply.  If corrective action is not taken in accordance with the schedule provided in Paragraphs 20 – 24 of Appendix A, or EPA and the State determine that the corrective action is not adequate, or the violation was discovered during an inspection performed by EPA or the State prior to the Audit, the stipulated penalties outlined in Paragraph 38.b apply.

b.   The following stipulated penalties shall accrue per violation per Day for violations of the requirements set forth in Paragraphs 13-22, unless Paragraph 39.a applies.

| <u>Penalty Per Violation Per Day</u> | <u>Period of Noncompliance</u> |
|---|---|
| $2,000 | 1st through 14th Day |
| $4,000 | 15th through 30th Day |
| $8,000 | 31st Day and beyond |

39.   <u>Stipulated Penalties for Failure to Perform Audits and Timely and Adequately Conduct Audits in Accordance with Appendix A of this Consent Decree</u>.  Defendant shall be liable for the following stipulated penalties that shall accrue per violation per Day for violations of the requirements pertaining to the compliance audits as set forth in Appendix A.

| <u>Penalty Per Violation Per Day</u> | <u>Period of Noncompliance</u> |
|---|---|
| $3,000 | 1st through 14th Day |
| $4,000 | 15th through 30th Day |
| $10,000 | 31st Day and beyond |

40.   <u>Reporting Requirements</u>.  The following stipulated penalties shall accrue per violation per Day for each violation of the reporting requirements of Section VI:

| Penalty Per Violation Per Day | Period of Noncompliance |
|---|---|
| $1,500 | 1st through 14th Day |
| $3,000 | 15th through 30th Day |
| $6,000 | 31st Day and beyond |

41.     The following stipulated penalties shall accrue per violation per Day for all other violations of this Consent Decree not set forth in Paragraphs 38-40 above.

| Penalty Per Violation Per Day | Period of Noncompliance |
|---|---|
| $1,500 | 1st through 14th Day |
| $3,000 | 15th through 30th Day |
| $6,000 | 31st Day and beyond |

42.     Stipulated penalties under this Section shall begin to accrue on the Day after performance is due or on the Day a violation occurs, whichever is applicable, and shall continue to accrue until performance is satisfactorily completed or until the violation ceases.  Stipulated penalties shall accrue simultaneously for separate violations of this Consent Decree.

43.     Defendant shall pay any stipulated penalties to the United States and the State within 60 Days of a written demand by either Plaintiff.  Defendant shall pay 50% percent of the total stipulated penalty amount due to the United States and 50% percent to the State.  The Plaintiff making a demand for payment of a stipulated penalty shall simultaneously send a copy of the demand to the other Plaintiff.

44.     Either Plaintiff may in the unreviewable exercise of its discretion, reduce or waive its portion of the stipulated penalties otherwise due it under this Consent Decree.

45.     Stipulated penalties shall continue to accrue as provided in Paragraph 42, during any Dispute Resolution (Section IX), but need not be paid until the following:

  a.  If the dispute is resolved by agreement of the Parties or by a decision of EPA or the State that is not appealed to the Court, Defendant shall pay accrued penalties determined to be owing, together with interest, to the United States or the State within 30 Days of the effective date of the agreement or the receipt of EPA's and/or the State's decision or order.

18

b.      If the dispute is appealed to the Court and the United States or the State prevails in whole or in part, Defendant shall pay all accrued penalties determined by the Court to be owing, together with interest, within 60 Days of receiving the Court's decision or order, except as provided in subparagraph c, below.

c.      If any Party appeals the District Court's decision, Defendant shall pay all accrued penalties determined to be owing, together with interest, within 60 Days of receiving the final appellate court decision.

46.     Defendant shall pay stipulated penalties owing to the United States in the manner set forth and with the confirmation notices required by Paragraph 10, except that the transmittal letter shall state that the payment is for stipulated penalties and shall state for which violation(s) the penalties are being paid.  Defendant shall pay stipulated penalties owing to the State in the manner set forth and with confirmation notices required by Paragraph 11, except the confirmation notice (via email or regular mail) shall state that the payment is for stipulated penalties and shall state for which violation(s) the penalties are being paid.

47.     If Defendant fails to pay stipulated penalties according to the terms of this Consent Decree, Defendant shall be liable for interest on such penalties, as provided for in 28 U.S.C. § 1961, accruing as of the date payment became due.  Nothing in this Paragraph shall be construed to limit the United States or the State from seeking any remedy otherwise provided by law for Defendant's failure to pay any stipulated penalties.

48.     The payment of penalties and interest, if any, shall not alter in any way Defendant's obligation to complete the performance of the requirements of this Consent Decree.

49.     Non-Exclusivity of Remedy.  Stipulated penalties are not the United States' or the State's exclusive remedy for violations of this Consent Decree.  Subject to the provisions of Section XI (Effect of Settlement/Reservation of Rights), the United States and the State expressly reserve the right to seek

any other relief they deem appropriate for Defendant's violation(s) of this Decree or applicable law, including but not limited to an action against Defendant for statutory penalties, additional injunctive relief, mitigation or offset measures, and/or contempt. However, the amount of any statutory penalty assessed for a violation of this Consent Decree shall be reduced by an amount equal to the amount of any stipulated penalty assessed and paid pursuant to this Consent Decree.

### VIII.   FORCE MAJEURE

50.     "Force majeure," for purposes of this Consent Decree, is defined as any event arising from causes beyond the control of Defendant, of any entity controlled by Defendant, or of Defendant's contractors, that delays or prevents the performance of any obligation under this Consent Decree despite Defendant's best efforts to fulfill the obligation. The requirement that Defendant exercise "best efforts to fulfill the obligation" includes using best efforts to anticipate any potential force majeure event and best efforts to address the effects of any potential force majeure event (a) as it is occurring and (b) following the potential force majeure, such that the delay and any adverse effects of the delay are minimized. "Force Majeure" does not include Defendant's financial inability to perform any obligation under this Consent Decree.

51.     If any event occurs or has occurred that may delay the performance of any obligation under this Consent Decree, whether or not caused by a force majeure event, Defendant shall provide notice orally or by electronic or facsimile transmission to EPA and the State in accordance with Section XIII (Notices), within five Days of when Defendant first knew that the event might cause a delay. Within seven Days thereafter, Defendant shall provide in writing to EPA and the State an explanation and description of the reasons for the delay; the anticipated duration of the delay; all actions taken or to be taken to prevent or minimize the delay; a schedule for implementation of any measures to be taken to prevent or mitigate the delay or the effect of the delay; Defendant's rationale for attributing such delay to a force majeure event if it intends to assert such a claim; and a statement as to whether, in the opinion

20

of Defendant, such event may cause or contribute to an endangerment to public health, welfare or the environment. Defendant shall include with any notice all available documentation supporting the claim that the delay was attributable to a force majeure. Failure to comply with the above requirements shall preclude Defendant from asserting any claim of force majeure for that event for the period of time of such failure to comply, and for any additional delay caused by such failure. Defendant shall be deemed to know of any circumstance of which Defendant, any entity controlled by Defendant, or Defendant's contractors knew or should have known.

52.      If EPA, after a reasonable opportunity for review and comment by the State, agrees that the delay or anticipated delay is attributable to a force majeure event, the time for performance of the obligations under this Consent Decree that are affected by the force majeure event will be extended by EPA, after a reasonable opportunity for review and comment by the State, for such time as is necessary to complete those obligations. An extension of the time for performance of the obligations affected by the force majeure event shall not, of itself, extend the time for performance of any other obligation. EPA will notify Defendant in writing of the length of the extension, if any, for performance of the obligations affected by the force majeure event.

53.      If EPA, after a reasonable opportunity for review and comment by the State, does not agree that the delay or anticipated delay has been or will be caused by a force majeure event, EPA will notify Defendant in writing of its decision.

54.      If Defendant elects to invoke the dispute resolution procedures set forth in Section IX (Dispute Resolution), it shall do so no later than 30 Days after receipt of EPA's notice. In any such proceeding, Defendant shall have the burden of demonstrating by a preponderance of the evidence that the delay or anticipated delay has been or will be caused by a force majeure event, that the duration of the delay or the extension sought was or will be warranted under the circumstances, that best efforts were exercised to avoid and mitigate the effects of the delay, and that Defendant complied with the

requirements of Paragraphs 50 and 51.  If Defendant carries this burden, the delay at issue shall be deemed not to be a violation by Defendant of the affected obligation of this Consent Decree identified to EPA and the Court.

## IX.   DISPUTE RESOLUTION

55.     Unless otherwise expressly provided for in this Consent Decree, the dispute resolution procedures of this Section shall be the exclusive mechanism to resolve disputes arising under or with respect to this Consent Decree.  Defendant's failure to seek resolution of a dispute under this Section shall preclude Defendant from raising any such issue as a defense to an action by the United States or the State to enforce any obligation of Defendant arising under this Decree.

56.     Informal Dispute Resolution.  Any dispute subject to Dispute Resolution under this Consent Decree shall first be the subject of informal negotiations.  The dispute shall be considered to have arisen when Defendant sends the United States and the State a written Notice of Dispute.  Such Notice of Dispute shall state clearly the matter in dispute.  The period of informal negotiations shall not exceed 20 Days from the date the dispute arises, unless that period is modified by written agreement.  If the Parties cannot resolve a dispute by informal negotiations, then the position advanced by the United States, after consultation with the State, shall be considered binding unless, within 30 Days after the conclusion of the informal negotiation period, Defendant invokes formal dispute resolution procedures as set forth below.

57.     Formal Dispute Resolution.  Defendant shall invoke formal dispute resolution procedures, within the time period provided in the preceding Paragraph, by serving on the United States and the State a written Statement of Position regarding the matter in dispute.  The Statement of Position shall include, but need not be limited to, any factual data, analysis, or opinion supporting Defendant's position and any supporting documentation relied upon by Defendant.

58.     The United States, after consultation with the State, shall serve its Statement of Position within 60 Days of receipt of Defendant's Statement of Position.  The United States' Statement of Position shall include, but need not be limited to, any factual data, analysis, or opinion supporting that position and any supporting documentation relied upon by the United States.  The United States' Statement of Position shall be binding on Defendant, unless Defendant files a motion for judicial review of the dispute in accordance with the following Paragraph.

59.     Defendant may seek judicial review of the dispute by filing with the Court and serving on the United States and the State, in accordance with Section XIII (Notices), a motion requesting judicial resolution of the dispute.  The motion must be filed within 30 Days of receipt of the United States' Statement of Position pursuant to the preceding Paragraph.  The motion shall contain a written statement of Defendant's position on the matter in dispute, including any supporting factual data, analysis, opinion, or documentation, and shall set forth the relief requested and any schedule within which the dispute must be resolved for orderly implementation of the Consent Decree.

60.     The United States, after consultation with the State, shall respond to Defendant's motion within the time period allowed by the Local Rules of this Court.  Defendant may file a reply memorandum, to the extent permitted by the Local Rules.

61.     Standard of Review

a.      Disputes Concerning Matters Accorded Record Review.  Except as otherwise provided in this Consent Decree, in any dispute brought under Paragraph 57 pertaining to the adequacy or appropriateness of plans, procedures to implement plans, schedules or any other items requiring approval by EPA and the State under this Consent Decree; the adequacy of the performance of work undertaken pursuant to this Consent Decree; and all other disputes that are accorded review on the administrative record under applicable principles of administrative law,

23

Defendant shall have the burden of demonstrating, based on the administrative record, that the position of the United States and the State is arbitrary and capricious or otherwise not in accordance with law.

b.  <u>Other Disputes</u>.  Except as otherwise provided in this Consent Decree, in any other dispute brought under Paragraph 57, Defendant shall bear the burden of demonstrating that its position complies with this Consent Decree.

62.  The invocation of dispute resolution procedures under this Section shall not, by itself, extend, postpone, or affect in any way any obligation of Defendant under this Consent Decree, unless and until final resolution of the dispute so provides.  Stipulated penalties with respect to the disputed matter shall continue to accrue from the first Day of noncompliance, but payment shall be stayed pending resolution of the dispute as provided in Paragraph 45.  If Defendant does not prevail on the disputed issue, stipulated penalties shall be assessed and paid as provided in Section VII (Stipulated Penalties).

## X.   INFORMATION COLLECTION AND RETENTION

63.  The United States, the State, and their representatives, including attorneys, contractors, and consultants, shall have the right of entry into any facility covered by this Consent Decree, at all reasonable times, upon presentation of credentials, to:

a.  monitor the progress of activities required under this Consent Decree;

b.  verify any data or information submitted to the United States or the State in accordance with the terms of this Consent Decree;

c.  obtain samples and, upon request, splits of any samples taken by Defendant or its representatives, contractors, or consultants;

d.  obtain documentary evidence, including photographs and similar data; and

e.  assess Defendant's compliance with this Consent Decree.

24

64.     Upon request, Defendant shall provide EPA and the State or their authorized representatives splits of any samples taken by Defendant.  Upon request, EPA and the State shall provide Defendant splits of any samples taken by EPA or the State.

65.     Until five years after the termination of this Consent Decree, Defendant shall retain, and shall instruct its contractors and agents to preserve, all non-identical copies of all documents, records, or other information (including documents, records, or other information in electronic form) in its or its contractors' or agents' possession or control, or that come into its or its contractors' or agents' possession or control, and that relate in any manner to Defendant's performance of its obligations under this Consent Decree.  This information-retention requirement shall apply regardless of any contrary corporate or institutional policies or procedures.  At any time during this information-retention period, upon request by the United States or the State, Defendant shall provide copies of any documents, records, or other information required to be maintained under this Paragraph.

66.     At the conclusion of the information-retention period provided in the preceding Paragraph, Defendant shall notify the United States and the State at least 90 Days prior to the destruction of any documents, records, or other information subject to the requirements of the preceding Paragraph and, upon request by the United States or the State, Defendant shall deliver electronic copies of any such documents, records, or other information to EPA or the State.  Defendant may assert that certain documents, records, or other information is privileged under the attorney-client privilege or any other privilege recognized by federal law or Nebraska law.  If Defendant asserts such a privilege, it shall provide the following:  (a) the title of the document, record, or information; (b) the date of the document, record, or information; (c) the name and title of each author of the document, record, or information; (d) the name and title of each addressee and recipient; (e) a description of the subject of the document, record, or information; and (f) the privilege asserted by Defendant and whether such privilege is recognized by federal law or Nebraska law.  However, no documents, records, or other information

25

created or generated pursuant to the requirements of this Consent Decree shall be withheld on grounds of privilege.

67.     Defendant may also assert that information required to be provided under this Section is protected as Confidential Business Information ("CBI") under 40 C.F.R. Part 2.  As to any information that Defendant seeks to protect as CBI, Defendant shall follow the procedures set forth in 40 C.F.R. Part 2 and the Nebraska Public Records Act, Neb. Rev. Stat. § 84-712 *et seq*.

68.     This Consent Decree in no way limits or affects any right of entry and inspection, or any right to obtain information, held by the United States or the State pursuant to applicable federal or state laws, regulations, or permits, nor does it limit or affect any duty or obligation of Defendant to maintain documents, records, or other information imposed by applicable federal or state laws, regulations, or permits.

## XI.     EFFECT OF SETTLEMENT/RESERVATION OF RIGHTS

69.     This Consent Decree resolves the civil claims of the United States and the State for the violations alleged in the Complaint filed in this action through the date of lodging.

70.     The United States and the State reserve all legal and equitable remedies available to enforce the provisions of this Consent Decree.  This Consent Decree shall not be construed to limit the rights of the United States or the State to obtain penalties or injunctive relief under the Act or implementing regulations, or under other federal or state laws, regulations, or permit conditions, except as expressly specified in Paragraph 69.  The United States and the State further reserve all legal and equitable remedies to address any imminent and substantial endangerment to the public health or welfare or the environment arising at, or posed by, Defendant's Facility, whether related to the violations addressed in this Consent Decree or otherwise.

71.     In any subsequent administrative or judicial proceeding initiated by the United States or the State for injunctive relief, civil penalties, other appropriate relief relating to the Facility or

Defendant's violations, Defendant shall not assert, and may not maintain, any defense or claim based upon the principles of waiver, res judicata, collateral estoppel, issue preclusion, claim preclusion, claim-splitting, or other defenses based upon any contention that the claims raised by the United States or the State in the subsequent proceeding were or should have been brought in the instant case, except with respect to claims that have been specifically resolved pursuant to Paragraph 69.

72.     This Consent Decree is not a permit, or a modification of any permit, under any federal, State, or local laws or regulations.  Defendant is responsible for achieving and maintaining complete compliance with all applicable federal, State, and local laws, regulations, and permits; and Defendant's compliance with this Consent Decree shall be no defense to any action commenced pursuant to any such laws, regulations, or permits, except as set forth herein.  The United States and the State do not, by their consent to the entry of this Consent Decree, warrant or aver in any manner that Defendant's compliance with any aspect of this Consent Decree will result in compliance with provisions of RCRA, the CAA and EPCRA, 42 U.S.C. § 6901 et seq.; 42 U.S.C. § 7401 et seq.; 42 U.S.C. § 11001, et seq.; and the Nebraska Environmental Protection Act, Neb. Rev. Stat. § 81-1501 *et seq*.; or with any other provisions of federal, State, or local laws, regulations, or permits.

73.     This Consent Decree does not limit or affect the rights of Defendant or of the United States or the State against any third parties, not party to this Consent Decree, nor does it limit the rights of third parties, not party to this Consent Decree, against Defendant, except as otherwise provided by law.

74.     This Consent Decree shall not be construed to create rights in, or grant any cause of action to, any third party not party to this Consent Decree.

## XII.   COSTS

75.     The Parties shall bear their own costs of this action, including attorneys' fees, except that the United States and the State shall be entitled to collect the costs (including attorneys' fees) incurred in

27

any action necessary to collect any portion of the civil penalty or any stipulated penalties adjudged to be due but not paid by Defendant.

## XIII.   NOTICES

76.     Unless otherwise specified in this Decree, whenever notifications, submissions, or communications are required by this Consent Decree, they shall be made in writing and addressed as follows:

| | |
|---|---|
| As to the United States by email: | eescdcopy.enrd@usdoj.gov<br>Re: DJ # 90-7-1-11505 |
| As to the United States by mail: | EES Case Management Unit<br>Environment and Natural Resources Division<br>U.S. Department of Justice<br>P.O. Box 7611<br>Washington, D.C.  20044-7611<br>Re: DJ # 90-7-1-11505 |

| | |
|---|---|
| As to the EPA by email: | meyer.jonathan@epa.gov |
| As to the EPA by mail: | Jonathan Meyer<br>Office of Regional Counsel<br>U.S. Environmental Protection Agency, Region 8<br>11201 Renner Boulevard<br>Lenexa, Kansas 66201 |
| As to the State of Nebraska: | Maegan L. Woita<br>Assistant Attorney General<br>Nebraska Attorney General's Office<br>2115 State Capitol<br>Lincoln, NE 68509-8920<br>maegan.woita@nebraska.gov |
| As to NDEE: | Section Supervisor, Waste Compliance Section<br>Nebraska Department of Environment and Energy<br>PO Box 98922<br>Lincoln, NE 68509-8922 |
| As to Defendant: | Timmery Fitzpatrick<br>Assistant General Counsel<br>Clean Harbors<br>P.O. Box 9149<br>42 Longwater Drive<br>Norwell, MA 02061-9149<br>Office: (781) 792-5172<br>Cell: (781) 204-9253<br>fitzpatrick.timmery@cleanharbors.com |
| With copy to: | Clean Harbors Environmental Services, Inc.<br>42 Longwater Drive<br>(Attn: General Counsel – urgent matters)<br>Norwell, MA 02061 |

77.     Any Party may, by written notice to the other Parties, change its designated notice recipient or notice address provided above.

78.     Notices submitted pursuant to this Section shall be deemed submitted upon mailing, unless otherwise provided in this Consent Decree or by mutual agreement of the Parties in writing.

## XIV.   EFFECTIVE DATE

79.     The Effective Date of this Consent Decree shall be the date upon which this Consent

Decree is entered by the Court or a motion to enter the Consent Decree is granted, whichever occurs

first, as recorded on the Court's docket.

## XV.   RETENTION OF JURISDICTION

80.     The Court shall retain jurisdiction over this case until termination of this Consent Decree,

for the purpose of resolving disputes arising under this Decree or entering orders modifying this Decree,

pursuant to Sections IX and XVI, or effectuating or enforcing compliance with the terms of this Decree.

## XVI.   MODIFICATION

81.     The terms of this Consent Decree, including any attached appendices, may be modified

only by a subsequent written agreement signed by all the Parties.  Where the modification constitutes a

material change to this Decree, it shall be effective only upon approval by the Court.

82.     Any disputes concerning modification of this Decree shall be resolved pursuant to

Section IX (Dispute Resolution), provided, however, that, instead of the burden of proof provided by

Paragraph 61, the Party seeking the modification bears the burden of demonstrating that it is entitled to

the requested modification in accordance with Federal Rule of Civil Procedure 60(b).

## XVII.   TERMINATION

83.     After Defendant has completed the requirements of Section V (Compliance

Requirements), has complied with all other requirements of this Consent Decree, and has paid the civil

penalty and any accrued stipulated penalties as required by this Consent Decree, Defendant may serve

upon the United States and the State a Request for Termination, stating that Defendant has satisfied

those requirements, together with all necessary supporting documentation, providing that a period of 5

years has elapsed from the effective date.

84.     Following receipt by the United States and the State of Defendant's Request for Termination, the Parties shall confer informally concerning the Request and any disagreement that the Parties may have as to whether Defendant has satisfactorily complied with the requirements for termination of this Consent Decree.  If the United States after consultation with the State agrees that the Decree may be terminated, the Parties shall submit, for the Court's approval, a joint stipulation terminating the Decree.

85.     If the United States after consultation with the State does not agree that the Decree may be terminated, Defendant may invoke Dispute Resolution under Section IX.  However, Defendant shall not seek Dispute Resolution of any dispute regarding termination until 15 Days after service of its Request for Termination.

## XVIII. PUBLIC PARTICIPATION

86.     This Consent Decree shall be lodged with the Court for a period of not less than 30 Days for public notice and comment in accordance with 28 C.F.R. § 50.7.  The United States reserves the right to withdraw or withhold its consent if the comments regarding the Consent Decree disclose facts or considerations indicating that the Consent Decree is inappropriate, improper, or inadequate.  Defendant consents to entry of this Consent Decree without further notice and agrees not to withdraw from or oppose entry of this Consent Decree by the Court or to challenge any provision of the Decree, unless the United States has notified Defendant in writing that it no longer supports entry of the Decree.

## XIX.   SIGNATORIES/SERVICE

87.     Each undersigned representative of Defendant and the Attorney General for Nebraska and the Deputy Chief for the Environmental Enforcement Section of the Environment and Natural Resources Division of the Department of Justice certifies that he or she is fully authorized to enter into the terms and conditions this Consent Decree and to execute and legally bind the Party he or she represents to this document.

31

88.     This Consent Decree may be signed in counterparts, and its validity shall not be challenged on that basis.  Defendant agrees to accept service of process by mail with respect to all matters arising under or relating to this Consent Decree and to waive the formal service requirements set forth in Rules 4 and 5 of the Federal Rules of Civil Procedure and any applicable Local Rules of this Court including, but not limited to, service of a summons.  Defendant need not file an answer to the complaint in this action unless or until the Court expressly declines to enter this Consent Decree.

## XX.    INTEGRATION

89.     This Consent Decree constitutes the final, complete, and exclusive agreement and understanding among the Parties with respect to the settlement embodied in the Decree and supersedes all prior agreements and understandings, whether oral or written, concerning the settlement embodied herein.  The Parties acknowledge that there are no representations, agreements, or understandings relating to the settlement other than those expressly contained in this Consent Decree.

## XXI.   FINAL JUDGMENT

90.     Upon approval and entry of this Consent Decree by the Court, this Consent Decree shall constitute a final judgment of the Court as to the United States, the State, and Defendant.  The Court finds that there is no just reason for delay and therefore enters this judgment as a final judgment under Fed. R. Civ. P. 54 and 58.

## XXII.  APPENDICES

91.     The following Appendices are attached to and part of this Consent Decree:

"Appendix A" is the Independent Third-Party Audit Protocol.


Dated and entered this 15th day of ____October____, 2020

_____
UNITED STATES DISTRICT JUDGE
District of Nebraska

FOR THE UNITED STATES OF AMERICA:

THE UNDERSIGNED PARTY enters into this Consent Decree in the matter of United States and State of Nebraska v. Clean Harbors Environmental Services, Inc.


   8/28/20                          s/ Nathaniel Douglas
Date                              NATHANIEL DOUGLAS
Deputy Section Chief
Environmental Enforcement Section
Environment and Natural Resources
Division U.S. Department of Justice


 s/ Rachel Hankey
RACHEL HANKEY, Ca Bar 226325
Environmental Enforcement Section
Environment and Natural Resources
Division U.S. Department of Justice
Washington, DC  20044-7611



JOSEPH P. KELLY
United States Attorney
District of Nebraska

s/ Laurie A. Kelley
LAURIE A. KELLY
Assistant United States Attorney,
District of Nebraska
1620 Dodge Street, Suite 1400
Omaha, NE  68102-1506
(402) 661-3700
Laurie.kelly@usdoj.gov

FOR THE U.S. ENVIRONMENTAL PROTECTION AGENCY:

THE UNDERSIGNED PARTY enters into this Consent Decree in the matter of United States and State of Nebraska v. Clean Harbors Environmental Services, Inc.

8/21/20                       s/ James B. Gulliford
Date                             JAMES B. GULLIFORD
                                   Regional Administrator
                                   U.S. Environmental Protection Agency, Region 7

                      s/ Leslie A. Humphrey
                      LESLIE A. HUMPHREY
                      Regional Counsel
                      U.S. Environmental Protection Agency, Region 7

                      s/ Jonathan W. Meyer
                      JONATHAN W. MEYER
                      Assistant Regional Counsel
                      U.S. Environmental Protection Agency, Region 7
                      Office of Regional Counsel

FOR THE STATE OF NEBRASKA:

THE UNDERSIGNED PARTY enters into this Consent Decree in the matter of United States and State of Nebraska v. Clean Harbors Environmental Services, Inc.


__8/19/20_____                    ___s/ Maegan L. Woita _____
Date                                 MAEGAN L. WOITA #26287
                                     Assistant Attorney General
                                     Office of the Attorney General
                                     2115 State Capitol
                                     Lincoln, Nebraska 68509
                                     Tel:  (402) 471-1912
                                     Fax:  (402) 471-1929
                                     maegan.woita@nebraska.gov

FOR CLEAN HARBORS ENVIRONMENTAL SERVICES, INC.:

THE UNDERSIGNED PARTY enters into this Consent Decree in the matter of United States and State of Nebraska v. Clean Harbors Environmental Services, Inc.

_7/23/20_____          _s/ Eric Gerstenberg_____
Date                   ERIC GERSTENBERG
                        Chief Operating Officer
                        P.O. Box 9149
                        42 Longwater Drive
                        Norwell, MA 02061-9149

## **Appendix A: Independent Third-Party Audit Protocol**

1.      Pursuant to Paragraph 22 of the Consent Decree, Defendant shall retain an independent third party Auditor(s) to conduct a CAA Section 112(r)(7) and a RCRA compliance Audit of the Facility in accordance with the requirements set forth in this Appendix A. Defendant shall give each Auditor a copy of this Consent Decree and all appendices, as well as all other information and access necessary to complete the Audits set forth herein.  The Audits must evaluate the Facility's compliance or conformance with the Audit standards set forth in Paragraphs 13-14 below and with the compliance requirements set forth in the Consent Decree.  Defendant shall ensure that the Auditors conduct the Audits in accordance with the requirements set forth in Paragraphs 13-14 below and according to the deadlines set forth in Paragraph 24 below.

2.      The definitions set forth in Section III of the Consent Decree shall apply in the Audits conducted in accordance with this Appendix.  All paragraph references in this Appendix refer to paragraphs in this Appendix unless otherwise noted.

3.      **United States and State Approval of Auditors**. The United States and the State have approved Rick Curtis of ABS Consulting Inc. as an independent third-party Auditor to conduct independent third-party Audits required by Paragraph 22 of the Consent Decree and as set forth in this Appendix.  If the Auditor identified above cannot satisfactorily perform the Audits, within 30 Days of learning that the Auditor cannot satisfactorily perform the Audit, Defendant shall submit for approval two or more proposed Auditors that meet the qualifications set forth in Paragraphs 4 and 5.  In the event that it becomes necessary to select a replacement Auditor as mentioned in this Paragraph, the United States and the State shall review the proposed replacement Auditors and either approve them in accordance with Paragraph 8 or disapprove them in accordance with Paragraph 9.

4.      Before the United States and the State can approve any replacement independent third-party Auditor to conduct the Audits required by Paragraph 22 of the Consent Decree and as set forth in Paragraphs 13-14 below, Defendant and each Auditor candidate must certify the following conditions have been met:

      a.      The Auditor is an independent third party, such as a private auditor, inspector, or other type of verifier external to the Defendant.  "Independent third-party" excludes the Defendant and its parent company and subsidiaries, second parties such as contractors or consultants that are within the firm's industry and with whom the regulated entity has a supply-chain relationship;

      b.      The Auditor agrees that if they have worked for Defendant in the past or intends to work for Defendant in the future, he or she must disclose the nature of that work to Defendant and to EPA and the State, to allow the parties to determine if that work creates a potential conflict of interest; and

      c.      The Auditor is either a recognized expert in the field of, or has otherwise demonstrated expertise in the application of, CAA Risk Management Program Regulations and RCRA regulations.

5.      The Auditor and Defendant understand and agree that the Auditor and EPA and the State may communicate independently with each other without notice to, or including, Defendant.

6.      Notwithstanding Paragraphs 1 to 5 the Auditor may assemble an auditing team, to be led by the Auditor.  The auditing team may include other employees of the third-party auditor firm or subcontractors meeting the criteria of Paragraphs 4 and 5. The Auditor may obtain participation in any audit by Audit Participants, including Defendant's personnel; however, Audit Participants shall not contribute to any Auditor's Report under Paragraph 18. The United States and the State have approved the following ABS Consulting Inc. employees as members of the auditing team:

> a.      Bill Bradshaw
> b.      Gary Carrithers
> c.      Marney Gilmore
> d.      Jim Klein
> e.      Dan Machiela
> f.      Becky McDonald

7.      The United States and the State shall review the proposed replacement Auditors and either approve them in accordance with Paragraph 8 or disapprove them in accordance with Paragraph 9.

8.      The United States shall notify Defendant in writing whether it and the State approve the proposed replacement Auditor(s).  Within 30 Days after the United States' and the State's approval of a replacement Auditor, Defendant shall retain an approved replacement Auditor to perform the activities set forth in Paragraphs 13 and 14 of this Appendix.  Defendant shall ensure that all Audit personnel who conduct or otherwise participate in Audit activities have certified that they satisfy the conditions set forth in Paragraphs 4 and 5 above before receiving any payment from Defendant.

9.      If the United States and the State disapprove of all of the proposed replacement Auditors, the United States will provide notice to Defendant stating the good-faith reasons for such disapprovals. Within 30 Days of receipt of the United States' and the State's notification, Defendant shall submit for approval another proposed replacement Auditor that meets the qualifications set forth in Paragraphs 4 and 5.  The United States and the State shall review the proposed replacement Auditor in accordance with Paragraph 0.  Disapprovals of the proposed replacement Auditors shall be subject to Section IX (Dispute Resolution) of the Decree.

10.     Nothing in Paragraphs 3 - 9 precludes the United States and the State from assessing stipulated penalties for missed Audit deadlines associated with the need to replace an Auditor unless Defendant successfully asserts that the inability of the Auditor to perform the Audit as required was a Force Majeure event in accordance with Section VIII of the Consent Decree; however, any pending Audit deadline set out in Paragraph 24 may be extended by mutual, written agreement between the parties should an Audit deadline be affected while the United States and the State are evaluating a replacement Auditor following Defendant's timely submission under Paragraph 3.

11.    Defendant shall be solely responsible for paying for each Auditor's fees and expenses.

12.    **Notice of Audit Commencement.**  At least 15 Days prior to the commencement of each Audit, Defendant shall provide notice to EPA and the State pursuant to Section XIII (Notices) of this Consent Decree of the Day that each Audit will commence along with the checklist that the Auditor(s) propose to use for the Audit.

13.    **Clean Air Act 112(r) RMP Audit Standards.**  The Auditor shall first audit Defendant's corporate-wide policies and engineering specifications that relate to the CAA Risk Management Program regulations that apply at the Facility according to the schedule set forth in the Table in Paragraph 24 of this Appendix.  Specifically, for the Clean Air Act 112(r) RMP Audit, the Auditor shall use the Center for Chemical Process Safety's *Guidelines for Auditing Process Safety Management Systems* and evaluate the Facility's documentation and its processes and equipment for compliance with the following standards:

      a.    Applicable RMP Regulations found at 40 C.F.R. Part 68, including Management System (per 40 C.F.R. § 68.15); Hazard Assessment (per 40 C.F.R. 68, Subpart B); Program 3 Prevention Program (per 40 C.F.R. 68, Subpart D); Emergency Response (per 40 C.F.R. 68, Subpart E); Risk Management Plan (per 40 C.F.R. 68, Subpart G); and Other Requirements (per 40 C.F.R. 68, Subpart H); and

      b.    Other requirements contained in the Facility's RMP Plans, RMP Prevention Program, Chemical Accident Prevention Program, and Process Safety Management System.  These include but are not limited to:

          i.    National Fire Protection Association (NFPA) standards 13, 25, 30, 30b, 68, 72, 400, 430, 497, 600, 650, 921, and 5000;

          ii.    Manufacturer recommendations;

          iii.    OSHA 1910.158 *Fire protection – Stand Pipe and Hose Systems*;

          iv.    Conveyor Equipment Manufacturers Association (CEMA) Standards

          v.    American Society of Mechanical Engineers (ASME) 820.1 – *Safety Standards for Conveyors and Related Equipment*;

          vi.    Clean Harbors Internal standards; and

          vii.    Nebraska Department of Health and Human Services Public Water System Standards Title 179 of the Nebraska Administrative Code.

      c.    Defendant shall ensure that the Auditor conducts a Section 112(r)(7) Audit at the

Facility that shall:

i.       Evaluate all covered processes for compliance with the applicable requirements of: Section 112(r)(7) of the CAA, 42 U.S.C. § 7412(r)(7), 40 C.F.R. Part 68, the corporate-wide policies and engineering specifications in Paragraph 15 of Appendix A, and all applicable federal, state and local codes and regulations and requirements in Paragraph 13 of Appendix A. The Audit must have a particular focus on the following items:

(1)      Safety Systems and current emergency response capability, if any, or reliance on local community first responders for releases of RMP chemicals;

(2)      Equipment maintenance, including but not limited to replacing out-of-date hoses and repainting rusted surfaces of nurse tanks;

(3)      Ensuring that Operating Procedures are current, accurate, and comprehensively cover all processes;

(4)      Hazard Reviews, and ensuring that hazards are reviewed and findings are timely addressed

(5)      Internal compliance audits are conducted every three years and findings are timely addressed and documented

(6)      Training for operators and maintenance personnel is appropriate;

(7)      Incidents, accidents, and releases are being reported in a timely manner and in compliance with applicable regulations; and

(8)      Emergency contact information is updated in a timely manner and in compliance with applicable regulations.

14.     **RCRA Audit Standards**.  The Auditor may use whatever assessments or evaluations he or she believes will aid in the compliance evaluation but at a minimum shall conduct the on-site evaluation in accordance with the applicable provisions of the "Protocol for Conducting Environmental Compliance Audits of Hazardous Waste Generators under RCRA," publication number EPA 305-B-01-003 (June 2001), and "Protocol for Conducting Environmental Compliance Audits of Used Oils and Universal Waste Generators under the Resources Conservation and Recovery Act," publication number EPA 300-B-00-002 (March 2000), and shall complete the applicable portions of checklists contained in these protocols that delineate all items that were evaluated.

a.       The RCRA Auditor shall evaluate the Facility's compliance with the following

A-4

standards:

ii.    All Federal RCRA Requirements and Applicable State RCRA Requirements found in Title 128 of the Nebraska Administrative Code, including but not limited to the requirements pertaining to:

(1)    Storage of waste less than 90 Days including, aisle space of storage areas, training for all personnel that handle or manage hazardous waste (40 C.F.R. Part 264, Subpart B, General Facility Standards);

(2)    Integrated Contingency Plans (Hazardous Waste Contingency Plan) (40 C.F.R. Part 264, Subpart D, Contingency Plan and Emergency Procedures);

(3)    Pre-Transport Requirements (40 C.F.R. Part 262, Subpart C); including container packaging, labeling, marking, dating, placarding and accumulation time);

(4)    Preparedness and Prevention (40 C.F.R. Part 264, Subpart C);

(5)    The Manifest (40 C.F.R. Part 262, Subpart B);

(6)    Land Disposal Restrictions (40 C.F.R. Part 268);

(7)    Air Emission Standards for Tanks, Surface Impoundments, and Containers (40 C.F.R. Part 264, Subpart CC);

(8)    Universal Waste (40 C.F.R. Part 273, Subparts A, B and D);

(9)    Used Oil (40 C.F.R. Part 279, Subparts A, B, C and E); and

(10)   Closing containers and addressing incompatible wastes (40 C.F.R. Part 264, Subpart D).

b.    In addition, the RCRA audit at the Facility should address considerations that are unique to Clean Harbors, including, but not be limited to, the RCRA Permit issued by NDEE in December 2015; Clean Harbors' Waste Analysis Plans, 40 C.F.R. Part 264 Subpart BB, being a permitted TSDF, etc.

15.    Defendant shall submit corporate-wide policies and engineering specifications that relate to CAA Risk Management Program regulations that apply at the Facility to the Auditor, as required by Paragraph 13, within six months after the Effective Date of the Consent Decree.

A-5

16.  **Audit Completion.**  Defendant shall ensure that each Auditor completes each Audit no later than the applicable deadline set forth in the Table in Paragraph 24 below.

17.  **Audit Out-briefing**.

   a.  Within ten Days of the completion of each on-site Audit, the Auditor shall conduct an out-briefing with Defendant in which the Auditor shall orally convey the major Audit Findings.

   b.  Defendant shall notify EPA and the State of the scheduled date of the out-briefing for each Audit at least five Days prior to the out-briefing.  EPA and the State shall have the right to have its representatives (including contractors) attend the out-briefing either in person or telephonically. If the out-briefing date changes, Defendant shall notify EPA and the State at least 48 hours prior to the out-briefing date.

   c.  Defendant shall correct Audit Findings disclosed at the out-briefing in accordance with Paragraphs 21-23 below. Regardless of whether Defendant corrects such Audit Findings, the Auditor shall include such Audit Findings in the Auditor's Report submitted to EPA and the State pursuant to Paragraph 18 below, but may also include a description of the correction(s) that occurred prior to submission of the Auditor's Report.

18.  **Auditor's Report.**  For each Audit at the Facility, no later than the applicable deadline set forth in the Table in Paragraph 24, Defendant shall ensure that the Auditor submits a report of the Audit results (Auditor's Report) directly to EPA and the State pursuant to Section XIII (Notices) of this Consent Decree, with a copy sent concurrently to Defendant.  The Auditor shall not share any written draft reports with Defendant prior to the submission of the Auditor's Report directly to EPA, the State and Defendant.  EPA and the State shall give notice to Defendant as soon as possible before it has any material communications directly with an Auditor about an Audit and give Defendant the opportunity to participate in such conversations.  The Auditor's Report shall:

   a.  Describe when and how the Audit was conducted, as well as the names of all Defendant's personnel involved with the Audit;

   b.  Describe all the types of information and records reviewed in each paper Audit phase and the equipment, processes, practices, structures and other items reviewed, tested, observed or evaluated during the on-site Audit phase;

   c.  Identify and list separately each Audit Finding of non-compliance and non-conformance with the Audit standards set forth in Paragraphs 13 and 14  and discovered in each Audit; and

   d.  Provide a detailed recommendation as to how each discovered Audit Finding should be corrected.

19.     At Defendant's election, the Audit may serve as the official RMP audit required by 40 C.F.R. § 68.79 provided that all requirements of that section are met.  The use of the Audit as the official RMP audit for a facility will reset that facility's three-year rolling clock for the performance of a compliance audit.

20.     **Defendant's Response Plan for Each Audit.**  For each Audit, no later than the applicable deadline set forth in the Table in Paragraph 24, Defendant shall submit to EPA and the State for review and approval, pursuant to Section XIII (Notices) of this Consent Decree, a written response plan (Defendant's Audit Response Plan) in which Defendant:

     a.     Responds to or comments on each of the Audit Findings; and

     b.     Describes each completed or proposed action to correct each undisputed Audit Finding, including the date(s) that such corrections occurred or are scheduled to occur. To the extent any corrective measure will take longer than three Days from the date of the Audit-Out Briefing to address, Defendant shall include a justification for the delay in correction of the undisputed Audit Finding.

21.     **Correction of Audit Findings.**  Except as provided in Paragraph 21.a below, for each Audit at the Facility, Defendant shall implement all steps necessary to correct each Audit Finding identified in the Auditor's Report as outlined in Defendant's Audit Response Plan within seven Days of receipt of the Auditor's Report.

     a.     <u>Extensions of Correction Deadlines in Limited Circumstances.</u>

          i.     Defendant may seek more time to implement correction of Audit Findings if in Defendant's Audit Response Plan, submitted to EPA and the State pursuant to Paragraph 20 above, Defendant explains and documents:

               (1)     That it is not reasonable under the circumstances to correct the Audit Finding by the applicable deadline set forth in Paragraph 21 for corrections; and

               (2)     The date by which Defendant believes correction is reasonable under the circumstances.

          ii.     Where Defendant seeks additional time to correct Audit Findings, Defendant shall correct such Audit Findings no later than the earlier of:

               (1)     The correction date proposed in Defendant's Audit Response Plan;

               (2)     The date indicated by EPA or the State in an objection submitted under Paragraph 22, provided that such date is not less than 90 Days after Defendant's receipt of EPA's or the State's objection;

A-7

(3)       A different date for correction agreed to by the parties or ordered by the Court in Dispute Resolution under Section IX of the Consent Decree; or

(4)       The latest possible date for correction under this Paragraph 21.a as set forth in the Table in Paragraph 24.

22.     **EPA and State Objections to Proposed Timing or Method of Correction of Audit Findings**.

a.      Within 45 Days after receiving Defendant's Audit Response Plan pursuant to Paragraph 20, EPA or that State may object to (1) the method by which Defendant has or intends to correct an Audit Finding; and/or (2) the proposed timing of correction where Defendant's Audit Response Plan proposes a later date for correction than the applicable deadline set forth in Paragraph 21 for correction. If EPA or the State objects, it shall notify Defendant in writing pursuant to Section XIII of the Consent Decree (Notices) as to the bases of its objection(s), and indicate what method or methods to correct the Audit Finding(s) are required, and/or provide the date(s) by which it believes it is reasonable under the circumstances for Defendant to correct the Audit Finding(s).

b.      If Defendant disagrees with EPA or the State's proposed method or timing of correction, it may invoke dispute resolution in accordance with Section IX (Dispute Resolution) of this Consent Decree by submitting a Notice of Dispute to EPA and the State within 30 Days of receiving EPA or the State's objection. If this method of correction is an issue in a dispute, it shall be Defendant's burden to establish that the method by which it proposes to correct the Audit Finding(s) will result in compliance with the applicable Audit standards set forth in Paragraphs 13 and 14. If the timing of correction is in dispute, it shall be Defendant's burden to establish (1) that it will cost more than $25,000 to correct the finding; and (2) that it is not reasonable under the circumstances to correct the Audit Finding(s) any earlier than the date proposed in Defendant's Audit Response Plan submitted pursuant to Paragraph 20.

c.      If Defendant does not invoke dispute resolution pursuant to Paragraph 22.b within 30 Days of receiving EPA or the State's objection, Defendant shall correct the Audit Finding(s) by the method indicated in EPA or the State's objection by the date set forth in the Table in Paragraph 24.

23.     **Notification of Correction of Audit Findings of Non-Compliance and Non-Conformance**. For each Audit Finding in the Auditor's Report, Defendant shall notify EPA and the State of the method and date of correction of the Audit Finding of non-compliance and non-conformance in the semi-annual report submitted pursuant to Section VI (Reporting Requirements) of the Consent Decree for the quarter in which the correction was completed.

A-8

24.      **Audit Milestone Deadlines.**   For the Audit, Defendant shall complete or ensure that the Auditor completes the following Audit milestones no later than the applicable deadlines set forth in the table below for: (1) Completion of the Audit as required by Paragraph 16; (2) Submission of the Audit Report as required by Paragraph 18; (3) Submission of Defendant's Audit Response Plan in response to the Audit as required by Paragraph 20; (4) Interim Deadline Correction of all Audit Findings as required by Paragraph 20.a; and (5) Deadline for Correction unless EPA and the State have agreed to an alternative date for correction.

| Deadline for Completion of Audit | Deadline for Auditor Report | Deadline for Defendant's Audit Response Plan | Deadline for Correction of Audit Findings Unless Justified per Paragraph 20.b | Deadline for Correction of all Audit Findings Unless Delayed per Paragraph 21 | Final Deadline for correction of all Audit Findings Delayed per Paragraph 21 |
|---|---|---|---|---|---|
| Eff. Date + 150 Days | Eff. Date + 210 Days | Eff. Date + 240 Days | Audit Out-Briefing + 3 Days | Receipt of Auditor's Report + 7 Days | Eff. Date + 330 Days |

25.      **Final Report on Actions Taken.**   Within 365 Days after the effective date, Defendant shall submit to EPA and the State a Final Report detailing activities undertaken to address and resolve the Audit Findings, including completion dates.

26.      **Access to Final Audit Report.**   Defendant shall provide the Final Report described in paragraph 18 to the Citizens Monitoring Committee within two months after completion of the audits.

A-9